Good morning, everyone. Good morning, Judge Gould. Good morning. Good morning to you. Is that on? Judge Gould, let us know if there's anything you don't hear or need us to make more clear. Okay. Can you hear me well? Hear you just fine. Okay. Thank you. Good morning, everyone. Good morning. Back on Baykeeper. Yes, Your Honor. In light of the Supreme Court's recent decision, counsel? Thank you, Your Honor. May it please the Court, my name is John Barg. I represent Cargill, and with me this morning is Neil Sawatsky from Cargill. I would like, if it's all right with Your Honors, to reserve five minutes of my time for rebuttal. Fine. I would like to thank the Court for setting this opportunity for us to address the Rapinos or Rapinos, I've heard it pronounced both ways, decision, and a different panel's recent decision in the city of Healdsburg because this is a developing area of the law, I think, as we all recognized when we were together last. What I'd like to do, if it meets with your approval, is begin by discussing the Rapinos decision, and you asked the question whether there was impact on our case, and I would like to address that as well. In the Rapinos case, the Court was called upon to decide whether wetlands adjacent to tributaries, although minor tributaries to navigable waters, are waters of the United States. That is, whether the wetlands themselves adjacent to distant tributaries are themselves waters of the United States. The Army Corps of Engineers asserted jurisdiction over those wetlands because they were, in the Corps' view, wetlands adjacent to tributaries of waters of the United States, of navigable waters. Does the agency, Justice Scalia, refer to as the enlightened despot? I believe so, yes, Your Honors. Okay. So comparing that factual scenario with ours, wetlands adjacent to tributaries is not our case. Plaintiffs have conceded in their summary judgment briefing below that our pond is not a wetland. It does not contain wetlands. It does not meet any of the criteria for wetlands. They've conceded there is no tributary jurisdiction. So unlike the Rapinos case, our case does not involve a tributary. The plaintiffs have waived all jurisdictional theories except that theory that was embraced by the district court, that adjacency alone, the proximity of Cargill's so-called pond to Mowry Slough is sufficient. Well, do you think adjacency is quite that narrow? I mean, if they say, is adjacency to be completely devoid of possible effects, it seems to me that adjacency might be viewed as saying adjacent and then having some impact one way or the other or something like that. Well, Your Honor, that's not what the Court said below. I mean, the Court made the point that this so-called pond is a water of the United States because it is adjacent. Yeah. And that's the last paragraph. All right. And knowing that counsel had conceded that there is no discharge from that so-called pond to Mowry Slough or to ---- Had they conceded, because there's some discussion of that in the Horn deposition that it's stated to be, well, it's a possibility that the berm could leak so that the pond could leak into the slough if the water levels were right and so on. Well, Your Honor, the case initially, as I recall, was brought on the theory that the pond to Mowry Slough and to San Francisco Bay had impact. That was abandoned in favor of the pond itself being a water of the United States, notwithstanding the fact that it is not navigable. And plaintiff's counsel said in argument, and I can certainly provide the explicit reference in the excerpts of record to Your Honor, that there is not disputed evidence ---- there is not undisputed evidence, I'm sorry, that the pond water migrates to Mowry Slough or the bay. He said if that were the case, it would be an easy case. But it's not the case. And he said that's not what their motion is based on. And the district court made it really clear what the case was based on. It was their argument that mere adjacency, simply being a water body with proximity to navigable waters is sufficient. So no tributary, no wetlands. So in that sense, then, the simple and straightforward answer is that the Rapinos decision does not control the outcome of our case. Ours is a different case. But we argued previously, and we continue to argue, that our case is controlled by the Supreme Court's decision in Swank dealing with isolated ponds. And you will recall, Your Honors, that there was a debate in the briefing about the meaning of the word isolated. And it was our position that isolated meant not connected to. And I cited a dictionary definition. It was plaintiff's argument that isolated meant distant, that there was a proximity element to isolated. I take it we'll deal with the Rapinos as one of the latest determinations by the Supreme Court. And it does involve something of a change or a refinement in the court's jurisprudence. And it's one of these cases that would make an interesting con law exam because it's a 441 decision. And I guess under extant authority, what we look to is that band of agreement which would provide a definition that we could work with, which may mean looking at Justice Kennedy's concurrence and the test that he lays out. It leads to this question. Can we tell from this record whether or not the facts would meet his nexus definition? Yes, Your Honor. If you were to apply Justice Kennedy's significant nexus test to this so-called pond, and keep in mind that he didn't apply it to a pond. He applied it to a wetland. He went into great detail for about a page of his opinion in pages three and four, defining what a wetland is and exactly how the Army Corps of Engineers makes a wetland delineation. And he made the statement, something to the effect of, a wetland is not just a moist spot on the ground or on the earth. But having said that, if the court were to expand the Rapinos decision to apply the significant nexus test then to a water body, what Justice Kennedy did, and the plurality and the dissents, by the way, repeatedly referred to impact upon navigable waters. And it's what this court did in the Talent v. Headwaters case, look downstream. What is the impact to traditionally navigable waters? And the impact here is zero. And, Your Honor, where would the court stop in its evaluation of puddles and accumulations of rainwater in ruts on a dirt road? Do those become federalized? Do those become waters of the United States because they are nearby? Counsel, I have a question for you. Yes, Your Honor. In terms of the argument that there is no impact of the pond upon the navigable water, would we be correct in deciding that on the current record and findings before us, or would it be preferable to remand to the district court for any findings of the district court or any supplementation of the district court in the light of Rapinos, given that the district court's prior findings and conclusions were made without the benefit of Justice Scalia's test or Justice Kennedy's test? Your Honor, that's a great question, and I think Judge Hawkins was urging me to deal with the same issue a moment ago. I do not believe a remand is necessary or appropriate in this case. Rapinos or Rapanos dealt with wetlands, not this pond. The significant nexus test is for wetlands, not ponds. Secondly, the plaintiffs explicitly waived all jurisdictional theories except adjacency, the mere proximity of this so-called pond to Maury Slough. Third, Justice Kennedy wanted the Karabel and Rapinos cases remanded so that the Army Corps of Engineers could make a determination of whether there is a significant nexus, and I believe that's right. The government should be the one who makes the initial determination of nexus over wetlands to navigable waters, so that a record can be created for the court to review. Here, the government announced that it thoroughly investigated all possible bases for jurisdiction over this so-called pond and came to the conclusion that there was none, and therefore decided to dismiss its action with prejudice that had been brought based on the migratory bird rule. Does that answer your question, Your Honor? Yes, thank you. Thank you. I guess I would elaborate on the question this way. If we disagreed with you and said that, well, adjacency, broadly interpreted, includes a nexus element, and would it be appropriate, since this is a summary judgment, and we had apparently no material factual disputes below, for us simply to examine the record here and decide whether there is any nexus? Well, Your Honor, I would answer that this way, and I know you'll tell me if I don't provide a sufficient answer. Rapinose dealt with wetlands and whether there's a significant nexus between the wetlands and navigable waters. Swank dealt with isolated ponds, and where I was heading with that was that we debated in briefs before this court. I think your answer to my question is that you don't accept the question. No, I do accept the question, Your Honor, and I believe the record is sufficient for this court to simply reverse for lack of jurisdiction, because what we have is an isolated pond, not a wetland that is adjacent. An isolated pond is one that is unconnected in any way to navigable waters, and our so-called pond is unconnected. And to the extent that there was ever any doubt about what isolated meant in Swank, the justices made it clear. What Swank means is unconnected. The dissent said it, Justice Kennedy said it, and the plurality said it. Ours is an isolated pond that happens to be pretty close to Mallory Slough, 125 feet. You know, the property in Rapinose was 10 or 11 miles away, wasn't it? It was. It was, Your Honor. But none of the justices adopted this sort of notion that the distance alone would be sufficient. In fact, I think it's fair to say that the plurality decision by Justice Scalia would leave open the possibility that if there is continuous flow, continuous surface connection from a distant wetland to a tributary, that's not an intermittent tributary but is continuously flowing, there would be jurisdiction over that. And I'm not sure Justice Kennedy would buy that, as it might be too far away. But all of them agreed that what Swank meant by isolated was unconnected. And so what difference does it make whether Cargill's pond is 125 feet, 500 feet, 50 feet? And where would the court draw the line? Would you say that every seasonal accumulation of rainwater in the mud that's near the bay or near a navigable lake is then a water of the United States, even though it doesn't discharge at all? If the case below is tried on the theory that adjacency alone is enough to establish jurisdiction, wouldn't that suggest that we should send it back to refine it under the new test? I don't think so, Your Honor.  If it was tried, if the district court tried it on adjacency alone, that suggests to me that this issue of whether there's some necessary or significant nexus between your client's pond and the slough and the bay was not examined and perhaps it should be. That's my question. Well, Your Honor, in my judgment that's been waived. And what we have is a record that the district court felt was sufficient on undisputed facts to grant summary judgment based solely on the proximity of that pond. In terms of nexus, there is sufficient record before this court to conclude that the decision below was not based on any kind of connection between my client's so-called pond and navigable waters because that's what Mr. Purcell said in oral argument. Counsel, I have a question on that. Yes, Your Honor. Is the idea that the berm is permeable, is that totally waived for all purposes or is it just something that the plaintiffs weren't relying on for summary judgment because of a disputed fact? So, in other words, if adjacency alone gets crossed out the window under current precedent, does that mean that there has to be a trial or does it mean your client wins? Or does it mean that there could be other findings on the undisputed facts that would sustain jurisdiction? Well, Your Honor, if the waiver in the settlement agreement means anything, it means that plaintiffs certainly have waived the argument that there has been that this so-called pond is a tributary contributing water to navigable water. So I don't think we need a trial on that. I think there's no jurisdiction now because the only basis for jurisdiction was adjacency. All others have been waived. That's what the settlement agreement says. So I don't think further findings with respect to nexus or permeability of the levy are needed. There were disputed facts with respect to that. And plaintiff chose to go forward without discussing those disputed facts and instead relied solely on adjacency. The Rapinoe's decision certainly, although it doesn't directly control our case, it does have broader implications, I think, because it stands for the proposition most certainly that Clean Water Act jurisdiction only goes so far. It does not include tributaries that contribute insubstantial flow. The plurality would require continuous flow. Justice Kennedy said, well, there has to be some flow and it needs to be substantial, whatever that is. Insubstantial flow or speculative flow is not enough. Well, what we have is no evidence of flow. So our case is better than that kind of envisioned by Rapinoe's. You wanted to save a little time for rebuttal. You're down to under a minute. All right, Your Honor. I will save the remainder. Thank you. We'll give you a little bit more time than that, because our questions took you over a bit. I appreciate that. Thank you, Your Honor. Thank you for your argument. Counsel. Good morning. Good morning. My name is Dan Purcell. I'm here on behalf of San Francisco Baykeeper and the Citizens Committee to complete the refuge. And I'd like to start, just so there's no confusion in the mind of the Court, by talking about exactly what we argued on summary judgment and exactly what the Court found. And I think the record is clear from the papers that are submitted. We did not argue adjacency alone. Adjacency was the central component of our argument, but we argued in our initial summary judgment motion, and we reiterated in the very first paragraph of our reply numerous other facts which contributed to our motion and which gave the Court a basis for finding a significant nexus, which, indeed, is what the Court ultimately did. Then you're really in no position to claim that you were surprised or anything or that it would be unfair to decide the issue of nexus. I'm not, Your Honor. In fact, I think the Court is in a position to decide that. I think, again, that's up to what the Court thinks. Whether there are enough facts, the Court could remand, but I think there's a sufficient record to decide nexus. Well, if you were already arguing adjacency in the broadest sense, connections of various kinds, then, I mean, you had your opportunity for discovery, and I suppose the record's closed. I don't know. I actually think that's fair, Your Honor. I think that the nexus we argued is sufficient to find jurisdiction here. Mr. Bard said this morning that there's 125 feet between the pond and the slough. I think their supplemental brief said that the berm was 55 feet wide. I'm not sure where 125 feet comes from. The fact is that Judge Ilston found on the second page of her summary judgment order that when the case was filed at high tide, there was one foot of distance between the pond and the slough. Well, I suppose it's between the berm. The berm was one foot wide at high tide. There was a foot's distance between the slough and the pond. So that's the proximity that we're dealing with. It's not 125 feet. It's one foot. And the berm was leaky. Water from the slough regularly entered the pond. That's undisputed. Yeah, that is. And there's a kind of an absence of evidence of water going the other way. And I would think in terms of the sort of purposes of the Clean Water Act that Justice Kennedy and the others recite that we'd be looking for some sort of flow the other way. Well, and I want to make clear that I in no way conceded before the district court that there wasn't evidence of that or there was no flow. What I said was there's not undisputed evidence of it. So, obviously, we did not rely on it for summary judgment because we couldn't have. But as far as the evidence of the flow outward, Justice Kennedy in his Rapano's concurrence makes it very clear that you don't need hydrological connection in the sense of water being transmitted from the wetland in that case to inavigable water to have jurisdiction. Well, he was saying that in a sense that the wetland serves as kind of an active filter and you might be doing something to change that if you discharged into it and that would be harmful. Right. And, again, Judge Olson found in her summary judgment order that adjacent water bodies have the potential to serve that same purpose as adjacent wetlands, that there is no functional distinction. If you assume, as Justice Kennedy did in his concurrence, that adjacency alone is enough, and he says this quite explicitly two times, and Justice Stevens and the four dissenters agree that adjacency alone is enough. For wetlands or for any water? Well, Justice Stevens frames the question in terms of wetlands. Justice Kennedy says, and this is the holding of his concurrence at page 2241 of the Supreme Court, that taken together, Swank and Riverside Bayview established that the connection between a non-navigable water or wetland and a navigable water may be so close or potentially so close that the court may deem the water or wetland a navigable water under the Act. That's what the significant nexus test means. Counsel, in that case, if we're dealing with a wetland and it's so, you know, so close in that sense, then it would seem that water may necessarily flows through a wetland into the other water. But if there's no evidence of that here, is it a different case? If you had adjacency, but somehow the Cargill Pond was 30 feet below the level of the bay into the pond but could never go the other way, would that be different than a wetland? That's not the case here, but if that were the case, would that type of situation be different from an adjacent wetland? I think the district court in that case would have to apply a different significant nexus test because the facts would be different. I don't think that a pond like that would still be bereft of any significant nexus to the navigable waters because you need to look at the variety of factors, not just, as Justice Kennedy said, the pure hydrologic connection in the sense of water from the wetland or the pond ending up in the navigable water. You need to look at not only that, but proximity, ecological connection, and the potential of the wetland for storing contamination and storing runoff, which Cargill has conceded this pond does. In fact, that's the purpose of it. The purpose of it is to store contaminated wastewater related to assault treatment facilities. This is at, I think, 109 through 113 in Cargill's excerpts of record. So there are a variety of factors to be considered. At some point in your argument, would you please address the waiver by settlement agreement argument asserted by Cargill, which could have some bearing on whether the district court could consider anything further or whether we could consider certain things? I'm happy to address that now, Your Honor. As I said the last time we were before you, and as we said in our brief, the settlement agreement specifically says that we waive jurisdictional theories other than the adjacent waters theory, which is a defined term. It means the theory we advance in our summary judgment papers, and that is the theory that the Court accepted. And Judge Ilston, as I was alluding to before, did not simply say adjacency. We're done. She marched through a factual analysis. She looked at Cargill's expert reports. She looked at proximity. She looked at saturated soils. She looked at use of the pond in interstate commerce. She looked at the hydrologic connection, as established, with pond water, or slew water coming into the pond, and then the potential for the flow to go the other way. And she looked at the uncontested material facts in the reports from plaintiff's experts, which was part of the record on summary judgment. And that involved ecological use. You have the same migratory bird species and other species using the slew and using the pond. So it was this sort of melange. The problem is virtually everything that she says in her opinion up to the last few sentences is phrased in terms of the arguments of the parties and the positions of the parties. So it's hard to say what, you know, it's an opinion that deals with the arguments of the parties, but very little of the findings of undisputed fact or the conclusions of the judge, except for those last few lines where she just says adjacent, it's adjacent. Now, I suppose it's fair to assume that all those arguments she was reciting had something to do with her final conclusion, but I don't know that she ever says so. Well, I think she does make it explicit, Your Honor, actually. If you look at the last paragraph of the order, what it says is given these statements from defendant's own experts, those are the statements about hydrologic connection, as well as the uncontested material facts in the reports from plaintiff's experts, that's ecological connection, and use in interstate commerce as well. This Court finds the pond is a body of water adjacent to Maori slew and, therefore, is protected by the Clean Water Act. So, you know, although it certainly could be more explicit, it is stated in the order that she's finding adjacency based on a nexus, not just based on pure proximity. And I suppose you don't need an expert to say whether something is physically adjacent or not. I don't think so, Your Honor. And, again, the undisputed evidence in the record was that it was a foot away from the slew at high tide when the case was filed. Cargill subsequently fortified the berm in an effort to defeat jurisdiction, but that shouldn't be part of it. It wasn't something that Judge Ilston considered and this Court shouldn't consider that either, I don't think. I'd like to go back to the question of adjacency alone being enough. And I do think that this is worth addressing in light of what Justice Kennedy said at page 2248 of his concurrence and what Justice Stevens said at page 2258 of his dissent. In both instances, they said that wetlands or waters for Justice Kennedy, wetlands for Justice Stevens were within the Clean Water Act based on pure adjacency alone. And this is the core definition of adjacency where you can have a berm that separates the wetland from the water of the United States, navigable, in fact, water, and that's still fine. And so that is something. Talking about their adjacency of a wetland? Excuse me, Your Honor? When they're talking about adjacency there, aren't they talking about the adjacency of a wetland? Well, again, Justice Kennedy frames the significant nexus test in terms of water or wetland. Justice Stevens is concentrating more on wetlands, but he doesn't disabuse the possibility of a water also being covered. And as we said in our brief, the Clean Water Act was passed to protect waters fundamentally. Wetlands are in some sense a secondary concern. And you saw the Supreme Court struggling with that in Riverside Bayview where they overcame it. They said, yes, wetlands are secondary, they're different from waters, but they're still entitled to protection. We're talking about Riverside Bayview? What they said isn't, yes, that's right. They said, yes, it was reasonable for the Corps of Engineers to regulate that wetlands adjacent to navigable water would be included. And once we concede the reasonableness of that, it would apply even to the Riverside wetland where there really isn't any interconnection between the two. But has the Corps of Engineers ever said anything else than that wetlands that are adjacent are? The Corps has not, but the Supreme Court has. And in the Swank case and then in the Ropinos case, you have the four Swank dissenters, led by Justice Stevens again, explicitly saying waters are central to the Act, wetlands are more subsidiary. And then you have in the Ropinos case, you have Justice Scalia for the plurality saying the Clean Water Act was supposed to protect waters, wetlands are again secondary. So and again, then you have Justice Kennedy in his concurrence saying waters or wetlands are good enough if they're they have a significant nexus to navigable, in fact, water. So, I mean, this is the Supreme Court reading the Clean Water Act, and you have essentially all nine members of the Court, well, let's say eight. Justice Kennedy's position on this is a little unclear. But the other eight have explicitly said in the Supreme Court's two major Clean Water Act decisions that waters are the central focus of the Act, wetlands are secondary, and it would be a fairly absurd result in this case for the pond to be unprotected even though a wetland in the exact same place would be. Well, except when you look at the original, that headwaters, you know, Bayside case, part of the explanation was that it's hard to tell where water stops and land begins. And wetlands are kind of a gray area here, and that may not at all be true of the isolated pond. Well, we don't think this pond is isolated. Or non-isolated pond. But to respond more directly to your point, Justice White in the Riverside Bayview majority opinion, what he said was that the core definition, which is even a wetland that is separated from a navigable, in fact, water by a berm, by a man-made berm or levee, where it's not hard to determine where the water ends and the wetland begins, there's a clear barrier that even that is protected. That's a reasonable assertion of jurisdiction. And in fact, in footnote 9 to that opinion, he says that even when you don't have a wetland that's particularly environmentally important, it's still protected when it's adjacent, and what the regulated entity has to do is go to the regulator and try to get a permit. They can't just build on it. You did say that, and I don't know whether that's simply another way of saying that legislation is usually general and can't be specifically tailored to every instance. It's okay if it just covers most of them. Right. And I think that's the point of the significant nexus test, which is a flexible multi-factor test that the court can use to actually flesh out what is some fairly general statutory language. Now, again, I want to stress that, you know, particularly in light of Healdsburg, Healdsburg did say that adjacency alone is not enough. I don't think that was the holding of Healdsburg. I think this panel could look at that anew, particularly in light of the fact that you have five members of the Supreme Court explicitly saying adjacency alone is enough. But you don't need to look at that. Counsel, how can our three-judge panel look at something in the North California River Watch case anew? Aren't we bound by what another panel says? You're bound by the panel. They said it after Rapanos, so we can't say Rapanos intervened. No, that's correct, Your Honor. I'm sorry. Yeah. Even if they were wrong, it seems like only an en banc court could say that. And that's, again, a question this Court doesn't need to reach. I think that it depends on whether or not that statement from the Healdsburg court about Rapanos and adjacency was the holding of Healdsburg. If it wasn't the holding, I don't believe that this Court is bound by it, and particularly in light of, again, five members of the Supreme Court explicitly saying the opposite. But it's not necessary because what the Healdsburg holding was is fully consistent with Rapanos, and that is that significant nexus is the test. And that, again, is the argument we advanced on summary judgment and which Judge Ilson accepted. Your Honor, I actually believe that I've somewhat exhausted my subject matter here. Unless there are other questions that the panel has for me, I'm happy to yield the rest of my time. Judge Gould, do you have any other questions? No, I don't. Thank you. Okay. I don't see any. Thank you, counsel, for your argument. We'll hear rebuttal at this time. Could you put two minutes on the clock? Thank you, Your Honor. Appreciate that. Your Honor, Mr. Purcell said that the district court made a determination based on significant nexus. Significant nexus is a phrase that is used in the district court opinion once, and it's on page 6, lines 22 to 25, where it appears in an indented quote from Swank. You'll recall that the Supreme Court in Swank said that it was the significant nexus between the wetlands that abutted the navigable waters in Riverside Bayview that informed our decision in that case. There was no determination by Judge Ilson on significant nexus. It was purely a matter of adjacency. And, Judge Canby, I believe you were absolutely right. The judge set forth the contending positions of the parties. Those certainly were not the determinations that she made in connection with significant nexus. Secondly, Mr. Purcell said that the slew is one foot from the pond, or words to that effect. High tide. At high tide, and wondered where the 125 feet came from. The levee is 55 feet wide. According to the pleadings, and every amendment to the complaint filed by plaintiffs, outboard of the levee are the Maori slew wetlands. And they go on for about 70 feet. Outside of those wetlands is Maori slew. So there are wetlands adjacent to Maori slew. When Maori slew at high tide inundates those wetlands, those wetlands are not thereby converted to the slew. I mean, they are certainly protected under the Army Corps of Engineers regulations protecting wetlands adjacent to navigable water. But there is 125 feet between that pond and Maori slew. I'll check this in the record. My understanding was that it was the statement was that at high tide, or at least at some high tides, the water from the slew comes within one foot of the top of the berm. There was, Your Honor. Wouldn't necessarily mean a foot away from the pond. Right. The pond is at some distance from this levee. But in any event, Mr. Purcell said to Your Honor that slew water regularly enters the pond. The record is that there were two occasions. I think it was two occasions back in 1983, if I remember right, or 82, during El Nino storms where slew water went into the pond. There has never been evidence of the reverse happening. So it didn't regularly happen. It happened twice about 20 years ago. Mr. Purcell, I think, is over-reading Justice Kennedy's opinion. It was about wetlands, not waters. What he said was Justice Kennedy's holding was actually how Justice Kennedy posited the question, based on where we are with Riverside Bayview and Swank, and what he was talking about, water or wetland, was the wetland adjacent to the tributary or so-called tributary in the Rapinos case. Your Honors know Rapinos didn't have anything to do with waters. It was a wetlands case. And to extend its reasoning to waters creates not only the line-drawing problem that Your Honor mentioned, but also where do we stop this? The Army Corps of Engineers made a determination in regulations and in technical memoranda that there is a difference between waters and wetlands, and wetlands are protected by adjacency and waters are not. Thank you, Your Honor. Thank you. Thank you, Counsel, for their arguments. Again, it's an extraordinarily interesting and important case. We appreciate your help. The case is argued and will be submitted for decision. And the Court will stand adjourned. Thank you, Judge Gould. Thank you. Thank you very much. Thank you.
judges: Canby, Hawkins, Gould